Council if you could approach those who are going to argue morning my name is Michael Johnson I'm representing the appellant Enrique Rendon morning Eric Seaburn on behalf of the state okay we've allotted 15 and 15 it goes a guess okay we don't have anything right after you but this is basically the constructs also for the record as I said for the first argument our colleague justice Smith is unable to be here today but will participate by listening to the oral arguments on tape and has already considered the brief that will be part of the deliberative process in this case okay thank you very much the parties in this case agree that Mr. Rendon is a sexually violent person and that's because you must be a sexually violent person and you must keep your voice up that's for recording not for amplification the parties agree that you must be a sexually violent person in this case and you must be one to be placed on a conditional release and you must be a sexually violent person to and with that in mind the legislature enacted numerous comprehensive conditions of release to protect the community there's no dispute in this case that Mr. Rendon followed each of those conditions are they exclusive are they exclusive yes as comprehensive as you say they are there may be a situation as we said in our brief where someone may be revoked where there's not rule violation for example if the level of supervision was not able to be met but even then you look at condition number three and it says you know you must fully comply with behavior monitoring you must fully comply with supervision you must fully comply with polygraphs and then you look down I believe it's number 38 in any event the rules of conditional release allow the Department of Human Services to impose additional discretionary restrictions and in this case all of those were met and the state did not seek to put any further restrictions or conditions on this conditional release even though it could have under that rule well let me ask you this if in a circumstance hypothetically where conditional relief is granted but circumstances factors arise after the fact that lead the people who made that decision to think or made that recommendation to think that it was improvidently granted what recourse would they have for somebody who had nonetheless complied with the restrictions and the conditions during the period of the conditional release however long it was section 20 of the SVP act incorporates the civil practice law and under the civil practice law if there was a judgment that should not have been entered that relief can be sought under section 214-01 the state did not seek relief from the judgment in this case if they're saying that he was not disclosing things prior to being conditionally released then that would seem to be a basis perhaps for saying that it was fraudulently concealed and extending the duration of filing for a 214-01 so in a situation like that the state would have to have that remedy at its fingertips but it did not argue that's the exclusive remedy I believe it would be unless it was within 30 days then perhaps there would be another remedy just to vacate the judgment but given that 30 days had gone by this was within two years they would have been able to do a 214-01 they would have been able to vacate the judgment if that's something that they thought that they could prove but that's not what they did in this case they tried to revoke his conditional release under section 40 before and that's what is present before the case and that's what judge the judge relied on in this case in finding that the safety of others required the conditional release be revoked and for two principal reasons we argue that the court should reverse that judgment and reinstate Mr. Vendone's conditional release and I'd like to focus on those the first is that the statute is unconstitutionally vague and the second is that there was insufficient evidence to support the trial court's finding but as you know we don't even reach the first unless we certify that we can't decide it on any other basis right if there's a statutory provision that would allow you to avoid the constitutional question that's undoubtedly what the Illinois Supreme Court has said but we can also look at I believe the people versus Torres case that came out of the only Supreme Court and they said sometimes there's a non-constitutional question and a constitutional question that are so closely related that you you really can't separate the two apart and to get to sufficiency of the evidence you really have to know what the safety of the others mean how do you measure whether there was sufficient evidence to prove well let me encourage you to go to the second and talk about the insufficiency based on the specific findings that the court made regarding whether or not he complied with all the conditions sure in this case we we set forth that the that is beyond the required dangerousness that comes with every sexually violent person being on conditional release the legislature knew that these people were dangerous they knew that they had mental disorders but they nonetheless intended for them to be unconditional release so starting with that baseline when we look at the trial court's finding here it was insufficient and part of the reason that it was insufficient is that the trial court found that mr. Rendon had fully complied with treatment he had fully complied with behavioral monitoring he had fully complied with supervision with polygraph testing so we have the court relying on these alleged failed polygraphs while at the same time making a finding that condition number three which requires attendance and full participation with polygraph examinations was not violated and that's a contradiction within how do you square how do you square that with the testimony that there was deception involved in some critical areas in the polygraphs that were given well I'm not sure that that testimony was admitted for its truth if the doctor were to consider that in coming to his opinion that perhaps mr. Rendon was not fully disclosing nonetheless we have a polygraph being given and whether or not he's failing it or there's deception indicated or he didn't tell the entire truth it's not clear what that means within the record but in any event he's disclosing after the polygraph before the polygraph and we look at the conditional release plan the first page of the conditional release plan says you know part of what we're doing here is polygraphing you to ensure compliance and to promote transparency so he is out there disclosing and dr. Smith admitted that he said yes he's making progress it's in an up-down pattern but he's continued to make progress in treatment and then tying in together with the case of people versus Williams with this court recently decided I acknowledge that it was vacated by the Supreme Court and remanded for reconsideration but it would seem that the rationale there and the internally contradictory findings of the circuit court would remain in effect even in light of people we've Fernandez there was a statement made I think it indicated that to the defendant he was speaking to the defendant directly that the there had been some of people in his circumstance who were on conditional release who had been you know where that had been ended and they were free after a period of time have you had that experience I know you folks do this work I believe there has been before I joined working with these folks that there was somebody who was discharged after conditional release so someone can be discharged and that if they complete the treatment and they go through the treatment and then they would eventually be looking to get discharged and detail is just for the moment if you could as to what penalties were paid by Mr. Rendon here in terms of the time that he served in terms of the time that he was held as an SVP and the time that he was out in the community and conditional release he was in the TDF since 1998 he was brought there and he was brought in under the sexually violent persons act following a parole revocation so he's been in since 1998 until 2010 when he gets conditional release and then he's on home confinement essentially the whole time and part of the reason for the home confinement according to the doctors was that he had failed polygraph so while he is disclosing he's still in home confinement while he's in the TDF he does not violate any rules that's come through the testimony of Dr. Smith that there were never a rule violation in his 12 years at the treatment and detention facility and we go through to no problem with his behavioral monitoring so while you know even if there is a concern the fact of the matter is that he's on conditional release in his home on GPS he's being monitored and that evidence right there shows why the safety of others that there was insufficient evidence to meet that standard. I'd like to turn back to the unconstitutionally vague argument because I think it ties in a little bit with the sufficiency of the evidence if we look at the timeline in this case the state first got a polygraph on May 30th of 2011 and they said that you know he had failed this polygraph he'd failed three questions Dr. Smith looks at that and he says that Mr. Renone can continue to go on conditional release and that's in June 7th of 2011 and the state files it. Isn't this pretty much the same standard that has been applied for decades to someone facing a civil commitment danger to themselves or to others? I believe that statute was repealed by the legislature after this case in Ray Torsky C that said that the definition of dangerous conduct in the civil commitment statute under the mental health code was unconstitutionally vague. They said it could apply to you know merely unusual behavior and that for that reason it was unconstitutionally vague and they also said that a need for definite standards was heightened in a case involving psychology and psychology I'm sorry psychiatry and that is precisely the case here where there needs to be. So is it your argument that to meet constitutional muster they have to specifically detail an exclusive list of what type of behavior would constitute a threat to the public? I think there would be one way to do it I don't think it's the only way to do it. How else would you suggest they could do it? Well some some sort of guidelines on you know if somebody is fully complying with their conditions of release what types of behavior or generally even generally what types of behavior would would threaten the safety of others and the word threaten isn't even in there it could be implied but the safety of reasonable doubt. Reasonable doubt is also undefined. Yeah. I think that there's a more of an ordinary common-sense meaning that attaches to it. I'd love to hear it because I've been reading it for years and years and I've read the Supreme Court US Supreme Court's decisions on the matter and nobody can this similar and if it's not similar how is it dissimilar? Well one way it's dissimilar is that that standard has been around for so long whereas when we look at this standard of the safety of others. So it's a grandfather clause? That could be one way of looking at it. The safety of others has no counterpart in Illinois law. There is nothing else that we have found in a statute that says that someone's liberty can be extinguished based on this undefined term safety of others and it which is what the Constitution requires and I think that's clear when you look at the specific instances of this case where we have a petition to revoke conditional release in 2011 and essentially it alleges that Mr. Rendon had deviant sexual fantasies and that he failed to disclose things to his treatment group. That was summarily denied with the judge apparently not even finding probable cause. Fast forward to 2012 we have a almost identical petition and there is a finding that his conditional release should be revoked because the safety of others requires it. So there's grossly disparate situations resulting from similar allegations and that is what is not allowed under the Constitution for decisions to be made based upon private conceptions. What's our standard of review on that issue the court's decision? The court's decision is that it was clear and convincing proof offered by the state that he had violated any terms of the conditional release but at the same time the court found that the safety of others was threatened as a result of what the defendant had done during the course of being in this conditional release. What's our standard of review? We submit to the court that the standard of review would be de novo in this case and if we look at the decision of Henry detention of Stambridge in that case the Supreme Court says. De novo on all issues? I believe de novo would be on all issues. For the two constitutional issues that would certainly be de novo review. That's you know understood. Not talking about the constitutional issue but just talking about the decision that the court made that there were no violations but still the safety of others was implicated. Well I'm not sure that the trial court's finding that there were no real violations is really an issue in this appeal so there would be we would submit no review for that decision. But what you're really arguing is that we have a de novo ability to review the decision that the even when there is no rule violation condition violation that that can be there could be a basis for revocation nonetheless but wouldn't you agree would be an abuse of discretion standard if we found that he could revoke on those other grounds as to whether that standard was met? Or a manifest way. If you if you took out the statutory interpretation. Right. Then yes it would probably be a manifest way to the evidence argument. Okay. If there are no further questions I would stand on our brief with respect to the third issue and reserve the remainder of my time for questions. Morning your honors. May it please the court. Erica Seaborn from the Attorney General's Office for the state. I'd like to start by talking about the sufficiency of evidence question because we need to. Put that mic down so that I can look at you instead of the microphone. Great. Thanks. In order to get to the sufficiency of the evidence we do have to do some statutory construction first and of course the purpose is to figure out what the intent of the legislature is. And the legislature wrote this statute as disjunctive. It says that conditional release can be revoked if the condition is violated or if the safety of others requires it. And for that reason people v. Williams which respondents cited in his reply brief isn't helpful to this question at all. If the statute is disjunctive then the trial court's finding that no condition was violated but the safety of others still requires revocation doesn't create the kind of internal contradiction that the Williams court found. What the safety of others there is it's a catch-all provision. We did copy this off of Wisconsin as we copied our entire SVP statutory scheme from Wisconsin. And they agree it's a catch-all provision. It's for things that can't be anticipated by the list of conditions. Now when the conditional release agents are putting together this plan they do their best to try to anticipate what's going to come up. And they do have a fairly comprehensive list and you can see it in the supplemental record. It's a really, really long detailed thing. Yes. You have to sign off on every single condition, right? He does. He initialed on every page and then there was a page where he had to initial for every single condition. Right. I don't remember exactly how many of them. How many of them there are but. Plenty. There are quite a few. And they're trying to anticipate what his behavior is going to be on conditional release and what problems might arise. But they can't anticipate everything. For example, in condition 3 it says you have to fully participate in polygraphs. Well, I don't know what they thought fully participate meant but apparently they did not anticipate that he was going to try to manipulate the polygraph results by shuffling his feet. Same thing with the PPGs. Well, that was of course an interpretation of what the intent was for someone whose feet shuffled. Yes. But it did lead to them not being able to get reliable results off the polygraph and he admitted that the reason he was doing this was because he thought he wasn't going to pass. Now, I don't know whether shuffling your feet actually helps you pass the polygraph or not. But apparently that was Mr. Rendon's admitted intent in doing it. And they could say, do it again, don't shuffle your feet. Yes. I don't know exactly how the polygraph examinations work. I don't know how many chances he gets to submit to each question before they decide to give up and move on. The other problem with the list of conditions is it can't be exclusive in part because the list of conditions has to be things that the conditional release agent can actually try to verify, which is why one thing that that list has in common is they tend to be concrete things. Did you show up for treatment? Yes. Do you have alcohol in your home? No. We can check on that. We can ask Ms. Meacham if you showed up for treatment. We can search your apartment to see if alcohol is there. One thing that we can't verify through the list of conditions is, are your sexual fantasies increasing? And when you're having these thoughts, are you disclosing them? Are you intervening in your sexual offense cycle the way that you've been taught to do in your cognitive behavioral therapy? Isn't it sort of Kafkaesque on one hand to say that you have to disclose all of these fantasies you have, and if you don't disclose fantasies and we determine that you're withholding them, you're in violation. But if you disclose them, we could use that also. Well, in this... To use your term, that would appear to be an internal contradiction. Well, I wouldn't use the term Kafkaesque either, but I understand the court's... Down the rabbit hole? He might. He might say that, and I believe that that's an issue that many SVPs have mentioned. But the problem is that he gets the credit for disclosing, and throughout Ms. Meacham's testimony and Dr. Smith's, you can talk about... They talk about him having an up-and-down sort of cycle of progress in treatment. It's good that he's disclosing. What's bad is the fact that, even when he's having these fantasies, he's not intervening in the way that he's supposed to. It's not enough to simply disclose. Mr. Rendon isn't a new SVP. He's been through all the stages of cognitive behavioral therapy. He's out on conditional release. We expect more from him because we gave it... He was given conditional release. When you say out, that's a relative term. He's out on... He's out of their facility and confined to his apartment. I believe he... I don't know if house arrest is the appropriate term, but I do believe his movement is extremely restricted. So, yes, but that is apparently preferable to being at Rushville, so... Let me see if I can direct your argument a little bit because I, again, want to use your term, internal contradiction. And how are we supposed to square up what the court did here when the court says, I find that the state did not provide clear and convincing evidence of any violation of the conditions of the release. But on the same hand, when he talks about why he's a danger to the safety of others, he's talking about ways in which he was, in some ways, not measuring up to those conditions. Well, the statute is... It's disjunctive. And I would also... I interpret the trial court's decision differently. He does say, I find that no specific conditions have been violated. The state didn't petition based on violation of conditions. They petitioned based on safety of others. And, again, a lot of these things that the trial court bases its decision on aren't necessarily... They might be related to conditions, but they're not directly a violation of those conditions. Certainly the way that they were expressed. In other words, that he was not in control of his fantasizing that he may have been misleading them about whether or not a woman was actually in his apartment. You know, the kind of things that would be a violation of the conditions, not that the state really went that way. They threw it in at the end. The state threw it in at the end. Well, it would have been a violation for him to have a woman in his apartment. The problem with that statement was, I believe that was one of the questions on the polygraph that was later found to be deceptive. But, again, that goes back to, he's having thoughts about having women in his apartment. Now, he knows he's not supposed to have women in his apartment. That would be a violation of the conditions. Safety of others prong is there for the things that don't necessarily fit into a condition or things that we might say, well, that might fit under condition three, but we can't necessarily prove that by clear and convincing evidence. I don't know. It just, it seems a little troubling that what we're essentially doing here is saying that we're going to revoke this conditional release because of what you're thinking about doing, not that you've done any of it. Well. Isn't really the danger, I mean, I guess we're crawling into this vagueness issue. They do seem a little bit linked. I mean, yeah, you've got somebody who has been sentenced for a violent crime, been determined to be sexually violent, and then saying, oh, but he's a danger to society. Well, I mean, wouldn't that be, if you had a Venn diagram, wouldn't it be like right there altogether? Because doesn't that define dangerous to others in some level? Well, I think that's one of the statutory interpretations that Respondent suggests might be appropriate. Well, I'm asking for your view of it. Well, I think a lot of this is based on, a lot of the things that they revoke conditional release on aren't necessarily the same things that made him an SVP. As Mr. Johnson said, we agree that he's an SVP. The conditional release revocation was based on things that aren't necessarily there for him to be an SVP. Things like him trying to pick through the polygraphs. It's not just that he's being misleading about questions about his sexual fantasies. It's the act of deception, the act of trying to get away from things. Dr. Smith's testimonies, beginning at page T63, is very helpful here because he explains how it is that Mr. Rennan enters his sexual offense cycle. He doesn't go from zero to rape. He goes from, first he has thoughts, then there's deviant arousal. He starts masturbating to these thoughts. He doesn't intervene in the way that he's supposed to. He starts trying to keep secrets. That's a big step in his sexual offense cycle, is when he's not disclosing, when he's trying to be deceptive. And we can see that when he's trying to receive a polygraph. Well, there's plenty of evidence of deception in this particular individual, isn't there? Yes. I would say that it's clear and convincing and then some, in terms of his particular deceptions. But when Dr. Smith testifies about this, this is why conditional release is there. We don't have to wait until he actually gets to the point of committing a new offense. In the Wisconsin case, which I believe is the only published case that interprets this kind of provision, says we don't have to wait until he commits a new offense. We have conditional release so that we can have this tentative situation where we can still monitor his behavior. I'm sorry, Justice Epstein. I'm sorry, because you were in the middle of a cogent thought and I interrupted. Then we get to maybe more metaphysical questions. You are who you are. And so he has these deviant fantasies at some point in his life, at some point. And he masturbates to them. There, of course, is a step between that and acting in a socially unacceptable and illegal and violent manner. But it is a shorter step than for somebody who never has those fantasies in the first place. So now you have somebody who is on, quote, conditional release. So he's monitored. He's in his home. His freedom is controlled. He is given drugs for the purpose of basically making him unable to act out any sexual activity. I believe that's the idea of Eligard. But I think both of the witnesses testified, we don't know how fast it works and we're not going to know how well it works. It's supposed to decrease his testosterone, but it can't actually change, I believe Dr. Smith characterized them as his attitudes towards women. As in, he sees women as rape victims. Which obviously nobody endorses. Let me make that clear with my questions. Has one crossed the line, in your view, of this standard, which is relatively undefined, to become a danger to others? Well, this is an issue of first impression, so hopefully this court can weigh in on that point. The Wisconsin case does say that essentially it's anything that would be a danger to, that would indicate that he has become a danger to others. Now, the fact that the statute's disjunctive between that and the conditions implies that these are things that aren't covered by the conditions, which is why we suggested that the court interpret this as being things that are sort of outside the box that the conditions of release can put him in, but that still implicate the safety of others. The finding that the court made basically, I think, could be summed up by saying that he wanted to revoke the conditional release because he was continuing to be deceptive with his case management team, and that with each step of this sort of misbehavior, he was getting closer and closer to re-offending. Yes. I mean, the unspoken issue here may well be that in a real world view, any time you have the state making an argument that there is something there under this standard, that there's something there that leads the danger to the public, that without standards, a trial judge would be impelled or at least consider the idea, well, I don't know what I'm supposed to look at, and if I am wrong in denying the state's petition, look what I have done, and look what can happen to me. That clearly is not an appropriate way to judge whether someone has violated the standard or not, and I don't mean to imply that Judge McHale was thinking about that, but when you have a standard which is ill-defined, haven't you really created something where human behavior being what it is, at least creates a very strong possibility that some judges somewhere will just say the path of least resistance is not on my watch, we're going to call them back? Two answers to that. The first being that apparently that didn't exactly happen in this case because, as Respondent pointed out, the first time that the state petitioned, the judge said no. So at least in that case, the judge had some idea of what was enough. He wasn't apparently solely interested in, oh, God, what's going to happen to me if this guy stays unconditionally in this position? Again, I didn't make the suggestion that that was what Judge McHale was doing. Right. Hypothetically. But I think that, frankly, that's sort of, I've never been a judge, but I've never seen a time a judge made any sort of decision, either in this context or the criminal context. Well, except, though, there are elements to crimes, and there is a better defined standard for almost every crime as to what you must have beyond a reasonable doubt decided, occurred, before you can convict someone. And here, it's just the generalized statement that we have, which could encompass a lot of behavior. I mean, you could say, someone could say, that if I saw a guy going down the street holding an automatic weapon in his hand, which is legal in many, many places now, that person is a danger to society, to the public. Respectfully, I'm not even going to try and touch a gun question. But you see what I'm saying. There's lots of behavior that could lead someone to the conclusion, I don't want to be anywhere near this person because this person is a danger to society, which would encompass completely legal behavior. Right. Well, I have two answers. First, being that, since we do seem to have moved on to the vagueness question, we can only look at whether it's vague as applied to him. He can't do a facial challenge unless we find that his specific behavior, it violates vagueness in that context. But when we're looking at vagueness, we're not supposed to look at the terms in isolation. We look at it in the context of the entire statute and the purpose of the legislation. Now, Mr. Rennan has been an SVP for a number of years, years of therapy, years of SVPs. He's one of the very first, right? Number four? I think he's number four. And I believe he's also one of the first to get placed on conditional release, although I'm told that there are now 27 SVPs who are on conditional release and 12 have actually been discharged. Twelve. Okay. So I was told yesterday by our SVP people. All right. But when we look, we don't look at these things in isolation. So the context is, would a person of ordinary intelligence in his situation think, well, I can be deceptive on polygraphs and they won't think that that's a problem of being a danger to the safety of others? He knows what leads to him being a danger. That's the whole purpose of his cognitive behavioral therapy, was for him to understand how his sexual fantasies and ignoring them and not intervening led him to the point where he committed his original offense. So it's not so much a hypothetical, what would a man off the street think that danger to the safety of others means? No, but still, there's an element of the dream police, you know, at play here where, you know, we're going to lock you up or keep you away from everybody else because of what you're thinking in your head, not necessarily what you're doing. Or likely to do. Well, that, I would say that if that's the court's concern, that's present throughout the entire SVP context, is we're always looking at people's thoughts and how those thoughts lead to behaviors. They thought the same kind of thing in Salem, I suppose, but, you know. The Supreme Court didn't hold that wish burning was constitutional. So we have Kansas v. Hendricks. I mean, we're making light of it, but the fact of the matter is this is very, very serious stuff on both sides of the debate here. Yes. But, you know, when you have a circumstance like this where he did his time for the two very serious crimes that he was found guilty of, forget about all this other stuff he claims to have done, 20,000 frottage incidents, I mean, you know. But, you know, he did his time for the two things that he was convicted of. He did all of that, quote, time civilly, being an SVP, and he was on conditional release. They're watching him like a hawk. He's on monitoring. And he's in his 60s. And in his 60s. Who are we? Happy to be there, too. Allegedly. And yet he's backsliding is essentially what it comes down to. Well, yeah, I know. So if the standard is you're backsliding mentally, we're going to revoke it, that just strikes me as a tough standard. That the fantasizing backsliding is enough to revoke your conditional release, that seems a little down the rabbit hole to me. I might characterize it as a tough standard, but I think it is deliberately written to be that way. And I don't think it's unconstitutionally vague. Now, in Mr. Rendon's case, when he initially went out on conditional release, he did well for the first few months. There were no problems. He was being constantly monitored. He was doing everything that he was supposed to do. The longer he's out, things start to happen. He's failing polygraphs. Then he starts trying to manipulate the polygraph results. Then he starts admitting that he's actually been lying in treatment. He admits that he was lying in treatment even when he was at Rushville. So it's not a case where, you know, he got put on conditional release and the first time that he even nudged a toe out of line, they instantly sent him back. This did go on over multiple court dates, multiple tests, multiple reports from the doctors before it finally gets to the point. And when it gets to that point, it's the point of he's not just having these thoughts. He's in his sexual offense cycle. He knows that he's in that cycle. He's deliberately not doing what he's supposed to do to keep himself from acting out. Instead, it's escalating to, huh, there's a woman walking past my apartment. I wonder if I could get her to come up here. And that is worrisome. And it's at that point that the trial court found that the state had provided clear and convincing evidence that safety of others was implicated here. I assume I am way past my time. If the court doesn't have any questions about the record issue, then we'll rest on our briefs. But, you know, we are past the time. But as Justice Lavin suggested, we take this case, as we do all cases, very seriously. And this does raise interesting questions, which both sides have explored admirably, both orally today and in the briefs. And it isn't an easy one. So we're happy to spend the time. Thank you, Your Honors. Okay. Just two brief points in rebuttal. The first is that the state has told you that since the statute is phrased in the disjunctive, that you can get revoked based on a rule violation or the safety of others, that those two things cannot be internally contradictory, as we suggested that they are. That cannot be the case where the allegations about the safety of others are so related to his treatment and his supervision and the conditions of release. So there is a contradiction. Well, isn't there grounds? Because it is disjunctive, saying it could be these conditions or it could be the safety to others. And you could have behaviors which are not clear violations of the conditions, which taken in the aggregate, although not taken individually, would raise the specter of a danger to the public. And isn't that really what she's saying? I'm not sure that that would be a proper definition for the safety of others. If you look at the Torsky C case, what it says is, you know, if somebody is out there doing something unusual that's causing or something that's erratic, that's not quite reaching a certain threshold, that that's not something that you can extinguish someone's liberty based on. If it's not going up to meet the level of a rule violation, then I'm not sure it's at the level that needs to be taking him out of conditional release and putting him back in a secure facility. But isn't the logical extension of your argument that those factors that are listed as conditions are really the exclusive basis on which the conditional release can be revoked? By and large, I would say that's true, especially when you consider that the department can make additional rules there. And they can add on case-specific rules, as they did in this case, about not owning a motor vehicle, not having knives, not having sharp objects that it used in the past. That's the way the trial court made its decision. It said there's no clear and convincing evidence, but the safety of others is implicated because of the sort of shortcomings with some of these conditions. Right. And at the same time, the treatment has been no evidence that he's not compliant with treatment. The second point I'll just make briefly is that the state had, during the 2011 evaluation, Dr. Smith made some recommendations there and said, Mr. Rendon, you need to be more open and honest. You need to disclose more of your deviant sexual fantasies. That's a little catch-22, isn't it? It is. And he told them to stop talking to his wife, and he stopped talking to his wife. Be honest. You're honest. You're going away. Very troublesome. Very troublesome. We appreciate that at that point. If there's nothing further, I'd ask the court to reverse and reinstate Mr. Rendon's conditional release. Thank you. Thank you both for a very fine presentation. Yeah, I don't think I've ever seen better briefing and argument on a more difficult issue in my brief time on the court, so thank you very much. Court adjourned.